UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20801-CR-JORDAN/O'SULLIVAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RAMIKO JERMAINE MONCUR,

      Defendant.

_____/

## REPORT & RECOMMENDATION

THIS MATTER is before this Court on Defendant Moncur's Motion to Suppress Evidence Pursuant to Unlawful Arrest (DE # 107).  This case was referred to the undersigned by the Honorable Adalberto Jordan, United States District Judge for the Southern District of Florida (DE # 118).  Having held an evidentiary hearing and carefully considered the applicable filings and the law, the undersigned respectfully recommends that Defendant Moncur's Motion to Suppress Evidence Pursuant to Unlawful Arrest (DE # 107) be **DENIED in part and GRANTED in part** for the reasons set forth below.

## BACKGROUND

_____The defendant Ramiko Jermaine Moncur (hereinafter "Moncur") is charged by complaint with conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846.  (DE # 1.)  On April 13, 2011, Moncur filed his motion to

suppress.  (DE # 105.)  Moncur seeks to suppress the information obtained from and in connection with his cellular phones seized pursuant to his arrest and the marijuana residue and scale discovered during later searches of his vehicle on the ground that the items were seized pursuant to an unlawful arrest.  (DE # 107 at 4-6.)  The government filed its response on April 27, 2011.  (DE # 112.)  On May 24, 2011 and on May 25, 2011, the undersigned held an evidentiary hearing.[1]  On June 10, 2011, the government filed its supplemental response in opposition to the defendants' motions to suppress.  (DE # 133.)  On June 28, 2011, Moncur filed his reply to the government's supplemental response.  (DE # 140.)

## FINDINGS[2]

On October 21, 2010, The United States Coast Guard intercepted a vessel, the Sea Swan II, which was transporting approximately 800 pounds of marijuana.  (DE # 134 at 10.)  The sole occupant and operator of the vessel, Francis Ferris (hereinafter "Ferris") agreed to cooperate with government agents and stated that he picked up the bales of marijuana in Bimini from a Bahamian male known to him as "Dude."  (Id. at 11-13.)  Ferris produced a receipt with the phone number "473-4291" and the name "Dude" written on it and informed agents that he was instructed to call Dude when he arrived in

---

[1] The government presented the testimony of Special Agent Daniel Perez (hereinafter "Agent Perez"), Special Agent Jesus Pertierra (hereinafter "Agent Pertierra"), Special Agent Karel Matyska (hereinafter "Agent Matyska"), Special Agent Michael Scott Crabb, Officer Ernesto Donate and Officer Alfredo Flores.  The government's exhibits 1-29 and 31-35 and Defendant Martin's exhibits 1A, 3A, 3B, 4A, 4B, 4C, 5A, 5B, 5C, 6A and 6B were admitted into evidence.

[2] Unless indicated otherwise, the facts referenced herein were testified to at the evidentiary hearing on May 24, 2011 (DE # 134) and May 25, 2011 (DE # 135).

the United States to receive further instructions for the marijuana.  (Id. at 10, 13; Gov. Ex. No. 1.)  Ferris subsequently placed a recorded call to Dude using a government phone and Dude instructed Ferris to call Charlie to get the telephone number for Chuck. (DE # 134 at 13-15.)  Ferris called Charlie and Charlie told Ferris that Chuck's telephone number was (786) 539-6749.  (Id. at 17.)  Before Ferris had a chance to call Chuck with the telephone number provided by Charlie, Chuck called Ferris from the number (754) 244-5623. (Id.)  Chuck told Ferris that he received Ferris' number from Charlie and that Charlie told him to give Ferris a call. (Gov. Ex. No. 6.)  Chuck told Ferris that he would call Ferris back after Chuck called his ride to let Ferris know where they should meet.  (Id.)  Ferris subsequently made arrangements with Chuck to deliver the marijuana to Chuck at Pelican Harbor Marina in Miami on the evening of October 21, 2010.  (DE # 134 at 19.)

Agents loaded the bales of marijuana into a Dodge Ram pickup truck for the controlled delivery to Chuck.  (Id. at 21.)  Ferris drove the Dodge Ram pickup truck to Pelican Harbor Marina.  (Id. at 23.)  Shortly after Ferris' arrival, defendants Charles Dion Francis (hereinafter "Chuck"), Brian Richard Martin (hereinafter "Martin") and Moncur arrived in two vehicles.  (DE # 135 at 11.)  The first vehicle to arrive was a Nissan Maxima sedan driven by Moncur and Chuck rode in the front passenger seat. (DE # 134 at 26; DE # 135 at 11-12.)  A Toyota Sienna minivan driven by Martin followed immediately behind the Nissan Maxima.  (DE # 135 at 11; DE # 134 at 26.) Ferris looked into the driver window of the Nissan Maxima and spoke with Moncur and Chuck.  (DE # 135 at 11.)  After speaking with Ferris, Chuck exited the Nissan Maxima, held a brief conversation with Martin who was inside the Toyota Sienna and walked

over and spoke to Ferris who was standing beside the Dodge Ram pickup truck.  (DE #
135 at 11, 13.)  During the time that Chuck and Ferris were speaking beside the Dodge
Ram pickup truck, Moncur and Martin backed into parking spaces across from the
Dodge Ram Pickup truck.  (Id. at 12; DE # 134 at 23-27.)  While backing the Toyota
Sienna into a parking space, Martin was seen by an agent observing the conversation
between Chuck and Ferris.  (DE # 134 at 28.)  After Chuck received the keys to the
Dodge from Ferris and entered the vehicle, agents arrested Chuck, Moncur and Martin.
(Id.)  When Agent Pertierra approached Moncur sitting inside the Nissan Maxima, the
vehicle engine and headlights were turned off.  (DE # 135 at 14.)  In connection with the
defendants' arrests, agents seized the defendants' personal items and packaged them
in separate evidence bags along with documents identifying which of the defendants
the personal items belonged to.  (DE # 135 at 15.)  In connection with Moncur's arrest,
agents seized one Huawie cell phone and one Kyocera cell phone which were taken to
ICE offices that evening in an evidence bag.  (DE # 135 at 57-58, 67-69; Gov. Ex. No.
32, 33.)  The agents subsequently identified the telephone number for the Huawie cell
phone as (754) 244-5623, the telephone number that Chuck called Ferris from.  (DE #
134 at 32; Gov. Ex. No. 11.)  Moncur signed a consent form authorizing agents to
search his Huawie cell phone.  (Gov. Ex. No. 11.)  Moncur's Nissan Maxima was taken
to ICE offices and an inventory search of the vehicle was conducted on the evening of
October 21, 2010.  (DE # 135 at 34; Gov. Ex. No. 27.)  Agents without knowledge that
an inventory search was already conducted on October 21, 2010 conducted a second
inventory search of the Nissan Maxima on October 22, 2010.  (DE # 135 at 35-36.)
During the second search, numerous bags of clothing and a scale were discovered

4

inside the Nissan Maxima.  (Id. at 16, 37, 39.)  The scale was processed as evidence.
(Id. at 141, 143.)  An inventory form was not completed in connection with the October
22, 2010 search of the Nissan Maxima and no arrangements were made to return the
personal items found.  (DE # 135 at 40, 72, 131, 141, 143.)

## ANALYSIS

### I. Probable Cause to Arrest Moncur

The government established that the agents had probable cause to arrest
Moncur at Pelican Harbor Marina on October 21, 2010.  Moncur drove Chuck to a
significant drug deal involving over 800 pounds of marijuana, spoke to Ferris and
parked his vehicle across from the transaction between Chuck and Ferris and remained
there until the transaction was complete. (DE # 134 at 23-27; DE # 135 at 11-12.)
"'Probable cause exists where the facts and circumstances within the collective
knowledge of the law enforcement officials, of which they had reasonably trustworthy
information, are sufficient to cause a person of reasonable caution to believe an offense
has been or is being committed.'"  United States v. Bates, 840 F.2d 858, 860 (11th Cir.
1988) (quoting United States v. Blasco, 702 F.2d 1315, 1324 (11th Cir. 1983)).
"'Although probable cause requires more than suspicion, it does not require convincing
proof, and need not reach the [same] standard of conclusiveness and probability as the
facts necessary to support a conviction.'"  United States v. Dunn, 345 F.3d 1285, 1290
(11th Cir. 2003) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)).  "The
officer's own subjective opinions or beliefs about probable cause are irrelevant,
because it is an objective standard."  United States v. Street, 472 F.3d 1298, 1305

(11th Cir. 2006) (citing <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042–43 (11th Cir.1997)).

Moncur argues that his mere presence at a public place during the controlled delivery is insufficient to give the government probable cause to arrest him.  (DE # 140 at 6.)  Moncur further argues that an assumption that Moncur was a participant in the drug conspiracy is unfounded and diminished given the fact that Ferris pointed out Chuck as the guilty party.  (<u>Id.</u>)  Moncur cites <u>United States v. Di Re</u> in support of his arguments.  <u>See</u> <u>United States v. Di Re</u>, 332 U.S. 581, 593 (1948) ("The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. . . . Moreover, whatever suspicion might result from Di Re's mere presence seems diminished, if not destroyed, when Reed, present as the informer, pointed out Buttitta, and Buttitta only, as a guilty party.").

Moncur is distinguishable from <u>Di Re</u> in that Moncur did not merely accompany Chuck to the controlled delivery but he drove Chuck to the meeting, spoke to Ferris and parked his vehicle across from the transaction between Chuck and Ferris and remained there until Chuck entered the Dodge Ram pickup truck loaded with approximately 800 pounds of marijuana.  <u>See</u> <u>United States v. Major</u>, 341 Fed. Appx. 549, 551 (11th Cir. 2009) ("[I]t is probable that Major was involved with the drug transaction because he was in Glinton's vehicle at the precise time and place Glinton was scheduled to make a significant cocaine sale, an unlikely situation for an unknowing passenger merely along

6

for the ride."); <u>United States v. Jacques</u>, 170 Fed. Appx. 476, 477 (9th Cir. 2006) ("This case involved more than the defendant's mere presence.  The defendant arrived by car at a pre-arranged drug buy/exchange involving a significant quantity of drugs with Johnson, a known drug dealer, who was driving.  After Johnson left the car to consummate the transaction with an undercover officer in the agent's car, the defendant moved Johnson's car so that it was parked to the left of, and next to, the agent's vehicle. . . . The defendant remained in Johnson's car during the transaction. Considering the totality of the circumstances, an objectively reasonable narcotics officer could have believed that there was a fair probability that the defendant was involved in the drug sale."); <u>United States v. Burrell</u>, 963 F.2d 976, 987 (7th Cir. 2006) ("These facts taken together supply probable cause for Henry's arrest. Henry and Jones arrived almost immediately after Burrell and Williams pulled into the Winfield Inn parking lot. Henry drove a car from Chicago; the arresting officer knew Burrell and Williams were coming from Chicago, and were bringing protection. Henry parked only 200 feet from the van, in a position where he could see it, and scan the surrounding area. In fact, Henry parked just six feet from the undercover officer who ultimately arrested him. Henry and Jones constantly watched the van and the area around the motel. A reasonably prudent person could conclude that Henry was involved in the drug transaction.").

Moncur is further distinguishable from <u>Di Re</u> in that Ferris did not point out Chuck as the only guilty party, but merely identified him as an individual involved in the drug transaction.  In fact, agents were made aware from the monitored phone calls that Chuck would be arriving at the controlled delivery with at least one other individual, his

7

ride.  (Gov. Ex. No. 6.)  Di Re involved a defendant who witnessed the exchange of

counterfeit ration coupons where an expert was required at trial to demonstrate that the

ration coupons were counterfeit.  Di Re, 332 U.S. at 593.  Here, while the 800 pounds

of marijuana was not necessarily visible, it would not be unreasonable for an agent to

anticipate an individual arriving at such a substantial drug transaction to bring along

trusted co-conspirators.  See United States v. Cruz-Valdez, 773 F.2d 1541, 1547 (11th

Cir.1985) ("we think it reasonable for a jury to conclude that in the course of

transporting or distributing millions of dollars worth of readily marketable [contraband

drugs], through channels that wholly lack the ordinary protections of organized society,

a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders.");

United States v. Iglesias, 915 F.2d 1524, 1528 (11th Cir. 1990) (the defendant's

presence on a boat loaded with over $100 million worth of cocaine and conversations

with other co-conspirators, coupled with the defendant's colleague's counter-

surveillance actions, was sufficient to support the conspiracy conviction); Major, 341

Fed. Appx. at 551 ("[I]t is probable that Major was involved with the drug transaction

because he was in Glinton's vehicle at the precise time and place Glinton was

scheduled to make a significant cocaine sale, an unlikely situation for an unknowing

passenger merely along for the ride.").

II. Seizure of Moncur's Cellular Phones

A. Standing

_____Only individuals who have a legitimate expectation of privacy in the place

searched have standing to challenge the validity of a government search.  Rakas v.

Illinois, 439 U.S. 128, 143 (1978).  In order to have standing to challenge a search, a

8

person "must manifest a subjective expectation of privacy in the invaded area that 'society is prepared to recognize as reasonable.'"  United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir.1998) (quoting Rakas, 439 U.S. at 143, n.12).  Mere possession of the item searched is insufficient to confer standing to challenge a search.  United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008).  The individual who challenges a search bears the burden of proving standing.  Id.  A motion to suppress must include allegations of standing that are sufficiently detailed and specific.  United States v. Eyster, 948 F.2d 1196, 1209 (11th Cir. 1991).

The government contends that Moncur does not sufficiently allege facts demonstrating standing in his motion to suppress and that Moncur's mere assertion that he has standing is insufficient.  (DE # 112 at 15.)  The Eleventh Circuit has held that a district court may properly deny a defendant's motion to suppress without a hearing where the defendant fails to allege facts showing that they had a legitimate expectation of privacy in the place searched.  See United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985).  The Eleventh Circuit in Richardson explained as follows:

> [A]llegations of standing alone will not suffice to obtain an evidentiary hearing or the suppression of evidence. A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. In short, the motion must allege facts which, if proven, would provide a basis for relief. A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing. Once a defendant has failed to make a proper pretrial request for suppression, the opportunity is waived unless the district court grants relief for good cause shown.

Id. (citations omitted).  In Richardson, the Eleventh Circuit found the district court's denial of the defendants' motions to suppress to be proper because "no allegation of

9

ownership or other legitimate expectation of privacy appeared in their motions." Id. at 1527.  Moncur alleges in his motion to suppress that his property, including the Kyocera and Huawie cell phones, were improperly searched and seized.  (DE # 107 at ¶¶ 18, 19, 25.)  Therefore unlike Richardson, Moncur makes allegations of ownership in the items seized.

The government also argues in its response that Moncur does not have standing to contest the seizure of the phones at issue because Moncur does not have a legitimate expectation of privacy in phones subscribed under alias names using fictitious information.  (DE # 112 at 13.)  The government contends that if Moncur's position is that his Huawie cell phone, the phone Chuck used to arrange delivery of the marijuana, belongs to a real person who goes by the alias name C.H., mere possession of the phone does not confer Moncur privacy interests in that phone.  (Id. at 14.)  On the other hand, if the fictitious information was used to subscribe to the phones in order to frustrate law enforcement, the government argues that any privacy interest in the phones would not be legitimate.  (Id. at 14.)  In support of its argument regarding Moncur's lack of legitimate expectation of privacy in his phones, the government cites United States v. Skinner, where a district court in Tennessee determined that the defendant did not have a legitimate expectation of privacy in a cell phone that was at all times used in public areas, where the phone was subscribed under a fictitious name by a drug supplier and given to the defendant as a part of the drug trafficking enterprise for the sole purpose of furthering illegal drug trafficking activities.  See United States v. Skinner, No. 3:06-CR-100, 2007 WL 1556596, at *15-17 (E.D. Tenn. May 24, 2007). The district court in Skinner distinguished a case cited by the defendant where the court

found that the defendant had standing to challenge the search of a cell phone issued by an employer for work purposes because the phone was set up for a legitimate business purpose by a legitimate employer and the defendant was also permitted to use the cell phone for personal purposes.  Id. at *15 (citing United States v. Finley, 477 F.3d 250 (5th Cir. 2007)).

Here, given that Moncur's motion to suppress alleges ownership of the cell phones, the undersigned will not address the government's argument regarding Moncur's position that the phones are actually owned by someone else.[3]  With respect to the government's argument regarding Moncur's lack of a legitimate expectation of privacy in his cell phones, the evidence before the court does not demonstrate that the phones were set up with fictitious information for the purpose of frustrating law enforcement.  In United States v. Daniel cited by the government, the Fifth Circuit questioned whether the defendant would have standing because the alias used "was obviously [a] part of his criminal scheme."  United States v. Daniel, 982 F.2d 146, 149 (5th Cir. 1993).  In Daniel, the intercepted package addressed to an alias contained methamphetamine.  Id. at 148.  The call logs for the Huawei cell phone shows that out of the 63 pages of calls detailed for a period spanning approximately 3 months, most of the calls involve numbers unidentified as having connection with the drug conspiracy. (Gov. Ex. No. 20.)  Therefore, unlike Daniel, the undersigned cannot find that the alias for the Huawei phone was obviously a part of Moncur's criminal scheme.  See also Skinner, 2007 WL 1556596, at *15 (finding Finley to be inapplicable because the

---

[3]  At the evidentiary hearing, the government stated that it knows the phones actually belong to Moncur.  (DE # 135 at 138.)

employer issued phone in <u>Finley</u> was used for personal and legitimate business uses, not solely for the purposes of drug trafficking (citing <u>Finley</u>, 477 F.3d at 250 )).  With respect to Moncur's Kyocera phone, the government does not contend that it was used in connection with the instant drug conspiracy and there is nothing before the court suggesting that it was set up under an alias for the purpose of frustrating law enforcement.  It is entirely possible that Moncur's phones were set up with fictitious information in order to thwart law enforcement but the evidence before the court does not support this contention.  In sum, the undersigned finds that Moncur has standing to object to the seizure of his cell phones.[4]

B. <u>Warrantless Seizure</u>

_____The Fourth Amendment prohibition of warrantless searches are subject to exceptions.  <u>United States v. McGough</u>, 412 F.3d 1232, 1237 (11th Cir. 2005).  The search of a person incident to a lawful arrest is reasonable.  <u>United States v. Lizaraza</u>, 981 F.2d 1216, 1223 (11th Cir. 1993).  A search of a vehicle incident to a recent occupant's lawful arrest is reasonable where "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  <u>Arizona v. Gant</u>, 129 S. Ct. 1710, 1723-24 (2009). The government has the burden of proving that an exception to the

---

[4]At the evidentiary hearing, Moncur indicated that he may withdraw his motion to suppress given that there was no testimony as to whether Moncur's phones were found on his person or in his vehicle and Moncur was unsure about his position on standing as a result.  (DE #135 at 149.)  Moncur stated at the evidentiary hearing that he would brief the issue of standing but his subsequent supplemental brief does not address standing.  (DE # 135 at 149; DE # 140.)  Therefore, the undersigned concludes that Moncur's position on standing remains consistent with his motion to suppress.

warrant requirement applies.  McGough, 412 F.3d at 1237 n.4 (citing United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2002); United States v. Jeffers, 342 U.S. 48, 51 (1951)).  The government must demonstrate by a preponderance of the evidence that Moncur's cell phones were lawfully seized.  See United States v. Wright, No. 3:06cr447/MCR, 2006 WL 3483503, at *2 (N.D. Fla. Nov. 30, 2006) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995); United States v. Matlock, 415 U.S. 164, 178 n.14 (1974)).  "In addition, '[t]he court is charged with reviewing the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence.'"  Wright, 2006 WL 3483503, at *2 (quoting United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993)).

_____At the evidentiary hearing, the agents were unable to recall the precise manner in which Moncur's cell phones came into the government's possession.  The government conceded at the evidentiary hearing that it does not know whether the cell phones were seized from Moncur's person or during a search of Moncur's Nissan Maxima.  (DE # 135 at 138.)  Nevertheless, the government argues that it may carry its burden of showing that the seizure of Moncur's cell phones was lawful despite the agents' inability to recall how the phones were specifically seized by showing that the seizures were legal under all conceivable circumstances.  (DE # 133 at 7.)  Given that Moncur's cell phones arrived at the ICE office on the evening of Moncur's arrest in an evidence bag along with Moncur's identifying documents, the government argues that Moncur's cell phones were logically seized in one of three lawful scenarios: (1) from Moncur's person incident to arrest, (2) from the passenger compartment of Moncur's

13

vehicle while he was not secured and in reaching distance of the passenger
compartment, or (3) from the passenger compartment of Moncur's vehicle after he was
arrested and secured away from the vehicle.  (DE # 133 at 5.)

      In considering the testimony, along with the other evidence presented and the
deductions and inferences that follow, the undersigned finds that the government has
met its burden of showing by a preponderance that Moncur's phones were lawfully
seized.  Given that the phones arrived at the ICE office shortly after Moncur's arrest in
an evidence bag along with Moncur's identifying documents separated from the
personal items of the other arrested defendants, it is more likely than not that the
government seized the phones from (1) Moncur's person pursuant to his arrest, (2) from
the passenger compartment of Moncur's vehicle prior to Moncur being secured[5] or (3)
from the passenger compartment of Moncur's vehicle after he was secured away from
the vehicle.   If the phones were seized after Moncur was secured and taken beyond
reaching distance of the Nissan Maxima, the seizure would have been authorized
because it was reasonable for agents to believe that evidence of the crime would be
found in the Maxima.  See United States v. Slone, 636 F.3d 845, 851-52 (7th Cir. 2011)
("In this case, it was reasonable to believe that evidence related to the offense of arrest
would be found in the passenger compartment, because agents had arrested Slone
while he was in the process of conducting security or countersurveillance operations in
a drug trafficking conspiracy. As the district court observed, officers 'could have

_____

     [5] The undersigned has found that there was probable cause to allow for the
arrest of Moncur.  Therefore, any search of his body or the vehicle prior to Moncur
being secured would be reasonable.  See Gant 129 S. Ct. at 1723-24; McGough, 412
F.3d at 1237.

reasonably expected to find money, cell phones, maps, drawings, or other evidence linking the occupants of the red Dodge pickup to the crime.' Slone's argument that the district court erred because the enumerated pieces of possible evidence 'are not contraband, nor necessarily evidence of any crime,' misperceives the inquiry. The offense of arrest was conspiracy—evidence that the parties were engaged in a joint venture was what officers reasonably would have been seeking.").

Agent Pertierra testified that he observed Moncur sitting down at Pelican Harbor Marina with his personal belongings in front of him.  (DE # 135 at 15.)  Agent Pertierra also testified that he observed Agent Perez obtaining evidence bags and packaging each of the defendants' personal belongings individually in bags.   (Id.)  Agent Matyska testified that he saw Moncur's Huawei and Kyocera cell phones at the ICE office on the evening of Moncur's arrest in an evidence bag along with his identification documents and that he completed the custody receipts for those phones.  (DE # 135 at 57-58, 67-69; Gov. Ex. Nos. 32-33.)  Moncur does not dispute that his phones were seized at Pelican Harbor Marina in connection with his arrest.  (DE # 107; DE # 140.)  Therefore, the circumstantial evidence is sufficient to meet the government's burden of demonstrating that Moncur's phones were lawfully seized at Pelican Harbor Marina. Moncur had an opportunity in his supplemental reply brief (DE # 140) to address the government's argument regarding meeting its burden through circumstantial evidence but did not do so.  Therefore, the motion to suppress with respect to Moncur's cell phones should be denied.

III. <u>Seizure of the Digital Scale</u>

Moncur objects to the seizure of the scale found during a second search of the

15

Nissan Maxima on October 22, 2010 on the ground that it was found during an unauthorized investigative search for evidence.  (DE # 140 at 5.)  Moncur contends that it is unreasonable to believe that the agents did not know that an inventory search was already conducted on October 21, 2010 and that the agents did not conduct a search even remotely close to the purpose of an inventory search on October 22, 2010.  (DE # 140 at 3-4.)  The government argues that the scale should not be suppressed because it was seized during a lawful inventory search and even if it was not lawfully seized, it should still not be suppressed because the agent acted in good faith belief that he was conducting the first inventory search of the vehicle.  (DE # 133 at 10.)

In order for a search to be upheld under the inventory search doctrine, law enforcement must have the authority to impound the vehicle and must comply with the policies governing the search.  See United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991).  "The Supreme Court has indicated that inventory searches are only justifiable if performed pursuant to explicit and comprehensive procedures. Without such procedures, officers are left with no guidance in the performance of a duty which is meant not as an investigatory technique but as a means for safeguarding individuals' possessions and protecting the police from false claims." Id. (citing Colorado v. Bertine, 479 U.S. 367, 372 (1987)).

The government contends that the agents were entitled to impound Moncur's Nissan Maxima and Moncur does not dispute this contention.  (DE # 133 at 8-9; DE # 140 at 2-5.)  The undersigned finds that the agents had the authority to impound the Nissan Maxima.  The agents had probable cause to arrest the occupants of the Nissan Maxima at Pelican Harbor Marina and the agents had no choice but to impound the

16

vehicle.  See Lindsey v. Storey, 936 F.2d 554, 558 n.3 (11th Cir. 1991) ("Plaintiff

Lindsey also claims that her automobile was wrongfully seized; this claim is meritless.

Patrolman Storey impounded the vehicle because its only authorized driver, Sutton, had

been driving under a suspended license and was under arrest. The remaining

passengers, plaintiffs Williams and McClaine, had no proof of insurance, and plaintiff

Williams had no driver's license. Patrolman Storey had no good choice but to have the

automobile towed.").

    The government contends that Agent Pertierra substantially complied with ICE

policies and procedures during his search of Moncur's Nissan Maxima on October 22,

2010 even though he failed to complete an inventory log or make arrangements to

return the personal property found in the car.  (DE # 133 at 9.)  Agent Pertierra testified

that he and Special Agent Joe Montoto (hereinafter "Agent Montoto") conducted an

inventory search of the Nissan Maxima on October 22, 2010 pursuant to a request by

Agent Perez.  (DE # 135 at 36-37.)  Agent Pertierra testified that at the time he

conducted the search on October 22, 2010, he was unaware that an inventory search

had already taken place on October 21, 2010.  (Id. at 35-36.)  Agent Pertierra testified

that the general inventory policy he followed calls for an inventory search shortly after

the seizure of a vehicle and that an agent is to look for personal property and

dangerous items.  (Id. at 35.)  Agent Pertierra testified that he searched the trunk of the

vehicle for personal property and found bags containing numerous items of clothing for

men, women and children and that a scale was found inside the vehicle by another

agent.  (Id. at 16, 37, 39.)  Agent Pertierra testified that no forms documenting an

inventory of the items found in the vehicle were filled out.  (Id. at 40.)  In addition, no

efforts were made to return the personal property found in the vehicle.  (Id. at 72, 131, 141, 143.)

The government cites United States v. Westerman and United States v. Loaza-Marin in support of its position that the agent's failure to complete an inventory form should not render invalid the inventory search.  See United States v. Westerman, No. 10-12999, 2011 WL 914308, at *1 (11th Cir. March 17, 2011); United States v. Loaiza-Marin, 832 F.2d 867, 868 (5th Cir. 1987).  The Eleventh Circuit in Westerman analyzed the Loaiza-Marin case because of factual similarities.  See Westerman, 2011 WL 914308, at *1.  In Loaiza-Marin, the court found that the failure to complete an inventory form did not render the search unreasonable because the defendant and the drugs were turned over to the DEA once the drugs were found and there was no longer a need to complete the inventory form as required under Border Patrol Policy.  See Loaiza-Marin, 832 F.2d at 868.  Here, although the scale was processed as evidence, the numerous items of clothing found in the trunk of the vehicle needed to be itemized in an inventory form and returned.  However the personal property was not accounted for and no efforts were made to return the items.  The government also cites United States v. O'Bryant in support of its position that the completion of an inventory form is not necessary.  See United States v. O'Bryant, 775 F.2d 1528, 1534 (11th Cir. 1985).  However in O'Bryant, the Eleventh Circuit determined that because the briefcase at issue was found next to a dumpster, the need to complete an inventory form or notify the determined owner of the contents does not enter the court's analysis because the briefcase was discarded.  Id.  Therefore, O'Bryant is also distinguishable as the contents of the Nissan Maxima were not discarded.

18

The undersigned finds that the scale was not seized pursuant to a valid inventory search.  Here, aside from Agent Pertierra's testimony regarding his subjective opinion that he and Agent Montoto conducted an inventory search on October 22, 2010, the government has put forth no evidence establishing that an inventory search was conducted.  The purpose of an inventory search is not to collect items of evidentiary value but to protect individuals' personal property and protect law enforcement from false claims.  See Williams, 936 F.2d at 1248.  As discussed at the evidentiary hearing, ICE has a number of procedures in place for this purpose which have not been followed in the instant case.  (DE # 135 at 131, 141, 143.)  The government contends that Agent Pertierra only found one significant item in Moncur's car, the digital scale which was processed as evidence and that his failure to complete an inventory log for the remaining items should not render his inventory search invalid.  (DE # 133 at 9.)  The numerous items of clothing discovered may not be significant to the government from an evidentiary perspective, but may be of significance to the owner.  The failure to inventory and make efforts to return the items lacking evidentiary value while processing the scale supports the notion that the search was not conducted for inventory purposes.

The government argues that even if the court finds that Agent Pertierra's inventory search was unlawful, the exclusionary rule should not be applied because Agent Pertierra in good faith believed that he was conducting the first inventory search of the vehicle and did not perform the search for investigative purposes.  (DE # 133 at 10-11.)  Contrary to the government's contention regarding Agent Pertierra's good faith inventory search, his conduct demonstrates otherwise.   Given the failure to take

19

measures to safeguard and return the personal items lacking evidentiary value, it is difficult to credit the agent's testimony that an inventory search was conducted in good faith.  Evidence may be suppressed if it can be said that agents may properly be charged with knowledge that the search was investigative rather than for inventory purposes.  See Herring v. United States, 555 U.S. 135, 143 (2009).  Accordingly, the undersigned recommends that Moncur's motion to suppress be granted with respect to the scale.

IV. Marijuana Residue

The government indicated in its supplemental response that it will not offer evidence of the marijuana residue at trial.  (DE # 133 at 2.)  Accordingly, the undersigned recommends that Moncur's motion to suppress with respect to the marijuana residue be denied as moot.

## RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant Moncur's Motion to Suppress Evidence Pursuant to Unlawful Arrest (DE # 107) be **DENIED with respect to the Huawei and Kyocera cell phones, DENIED as moot with respect to the marijuana residue and GRANTED with respect to the scale**. The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Adalberto Jordan, United States District Court Judge.   Failure to file objections timely shall bar the parties from attacking on appeal the factual findings

20

contained herein.  *See LoConte v. Dugger*, 847 F. 2d 745, 750 (11th Cir. 1988).  *See also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F. 2d 1144, 1149 (11th Cir. 1993).

    RESPECTFULLY SUBMITTED, in Chambers, at Miami, Florida, this 28th day of July, 2011.

                           JOHN J. O'SULLIVAN
                           UNITED STATES MAGISTRATE JUDGE

Copies provide to:

U.S. District Judge Adalberto Jordan
All Counsel of Record