**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 30, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  12-11389-EE
Case Style: USA v. Ramiko Moncur
District Court Docket No: 1:10-cr-20801-JAG-4

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6224

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit
_____

No. 12-11389
_____

District Court Docket No.
1:10-cr-20801-JAG-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAMIKO JERMAINE MONCUR,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: March 05, 2014
For the Court: John Ley, Clerk of Court
By: Djuanna Clark

Mandate Issued:
June 30, 2014

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11389

_____

D.C. Docket No. 1:10-cr-20801-JAG-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAMIKO JERMAINE MONCUR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 5, 2014)

Before MARCUS, FAY, and WALKER,[*] Circuit Judges.

_____

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by
designation.

PER CURIAM:

Ramiko Jermaine Moncur was convicted in the United States District Court for the Southern District of Florida for conspiracy to possess with intent to distribute and an attempt to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Moncur now appeals the convictions, arguing both that the evidence was insufficient, and that the district court committed reversible error by instructing the jury that if it were to find Moncur guilty of either or both charges, it would have to find him responsible for the total amount of marijuana that was the object of the conspiracy or the attempt. After thorough review, we conclude that the evidence was sufficient to sustain Moncur's convictions. Moreover, any possible error in the court's supplemental jury instruction was harmless. Accordingly, we affirm.

## I.

### A.

The essential facts adduced at trial are these. On October 21, 2010, at around 12:30 p.m., the U.S. Coast Guard intercepted a vessel transporting approximately 366 kilograms (807 pounds) of marijuana near the coast of Miami. The owner and sole occupant of the vessel, Francis Ferris ("Ferris"), informed the government agents that he picked up the bales of marijuana in Bimini from a Bahamian male known as "Dude." Ferris agreed to cooperate with U.S. Immigration and Customs

Enforcement agents in arranging a controlled delivery of the marijuana. That afternoon, Ferris exchanged numerous telephone calls with co-conspirator Charles Francis ("Francis"), who planned to purchase and pick up the marijuana from Ferris at the Pelican Harbor Marina in Miami.

Agents loaded the bales of marijuana into a Dodge Ram pick-up truck for the controlled delivery that evening, and Ferris drove the vehicle to the marina. Shortly after 7:30 p.m., Francis arrived at the agreed-upon delivery location in a Nissan Maxima sedan driven by the appellant, Moncur, Francis's life-long friend. Co-conspirator Brian Martin entered the marina in a Toyota Sienna minivan that followed closely behind Moncur's sedan. After Moncur pulled into the marina, Francis got out of the car to speak with Ferris. Meanwhile, Moncur and Martin backed their vehicles into parking spots and waited. Notably, Moncur turned off his engine and headlights. Ferris handed Francis the keys to the pick-up truck containing the marijuana, and when Francis attempted to start the truck, the authorities quickly arrested the four co-conspirators.

In connection with the arrest, the agents seized two cellular telephones belonging to Moncur. Moncur consented to the agents' search of one of the telephones (the "Huawei cellular phone").[1] The agents identified the telephone

---

[1] With respect to Moncur's other cellular telephone, the district court noted in its order on Moncur's pre-trial motion to suppress evidence that "the government does not contend that [this

number for Moncur's Huawei cellular phone as the same number that Francis used on October 21 to call Ferris and arrange the delivery.

B.

On November 4, 2010, a federal grand jury returned a four-count indictment charging Ferris, Francis, Martin, and Moncur with multiple narcotics and conspiracy offenses. Specifically, the indictment charged Moncur with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and an attempt to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Unlike the other indicted co-conspirators, Moncur pled not guilty and proceeded to trial.

Over the course of a four-day jury trial, the government presented the testimony of Ferris and numerous law enforcement agents involved in the investigation and controlled delivery. Moreover, the government presented evidence demonstrating that Moncur's Huawei cellular phone was registered under a false name and address. Finally, the government introduced incriminating call records from the Huawei cellular phone, as well as from Francis's and Martin's cellular phones. At the close of the government's case, Moncur moved

---

phone] was used in connection with the instant drug conspiracy and there is nothing before the court suggesting that it was set up under an alias for the purpose of frustrating law enforcement."

unsuccessfully for a judgment of acquittal on both counts pursuant to Federal Rule

of Criminal Procedure 29. The defense rested without calling any witnesses.

In its charge to the jury, the court delivered the following standard

instruction:

> You may find the Defendant guilty of the crime[s charged] even if the
> amount of the controlled substance for which he should be held
> responsible is less than 100 kilograms of marijuana. So, if you find the
> Defendant guilty, you must also unanimously agree on the weight [of]
> the marijuana the Defendant conspired [or intended] to possess and
> specify the amount on the verdict form.

See Eleventh Circuit Pattern Jury Instructions, Offense Instruction No. 98, 100

(2010). The court also provided the jury with a two-page special verdict form

including sections for both counts in which Moncur was charged. For each count,

the verdict form asked the jurors to find Moncur guilty or not guilty, and, if they

found him guilty, to specify the amount of marijuana he "conspired [or attempted]

to possess with intent to distribute" by placing an "X" in the appropriate box. The

three options provided were: marijuana (A) weighing 1,000 kilograms or more, (B)

weighing 100 kilograms or more, and (C) weighing less than 100 kilograms.

However, during deliberations, the jury submitted the following question to

the district court: "If guilty, does the verdict require selection of (B) which

corresponds to the seized amount of marijuana? Or are we to select based on our

opinion of share of total amount attributable to defendant?" The court proposed the

following response: "If you find the defendant guilty of either or both counts then

the defendant would be responsible for the total amount of the marijuana you find

was the purpose of the conspiracy or the attempt." Defense counsel objected to the

proposed response, explaining,

> The only problem, the answer is taking away any decision by the jury.
> They are asking if they are going to find him guilty, do they have to
> select the amount that is reflective of the amount seized or which they
> are of the opinion that is attributable to Mr. Moncur? They have their
> own opinion and the answer, unfortunately, you are telling them they
> have to find him guilty of all the marijuana. . . . By instructing them
> they have to find him guilty of everything takes away their decision-
> making power.

The court overruled the objection, but remarked,

> Your objection is well taken. Your objection is noted, and I commend
> you for seeing the problem. I don't know of any other way to answer
> it except the . . . way I have answered it. . . . I will tell them you
> should consider these answers together with all of the other
> instructions previously given.

The jury found the defendant guilty on both counts and specified that

Moncur conspired and attempted to possess with intent to distribute marijuana

weighing 100 kilograms or more (option B). The district court sentenced Moncur

to the mandatory minimum of ten years of imprisonment under 21 U.S.C. §

841(b)(1)(B) based on a prior felony drug conviction and his instant convictions

involving 100 kilograms or more of marijuana. It also placed Moncur on

supervised release for a term of eight years following release from imprisonment,

and imposed a total special monetary assessment of $200.

This timely appeal followed.

## II.

First, Moncur argues that the trial evidence shows no more than his "mere presence" at the marina on October 21, and, thus, is insufficient to sustain his convictions for conspiracy and attempted possession of marijuana. We are not persuaded.

We review sufficiency-of-the-evidence challenges de novo, viewing the evidence in the light most favorable to the government. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). Moreover, we are obliged to draw all reasonable factual inferences and make all credibility choices in favor of the jury's verdict. Id. A guilty verdict will not be disturbed unless no reasonable trier of fact could have found guilt beyond a reasonable doubt based on the evidence in the record. United States v. Langford, 647 F.3d 1309, 1319 (11th Cir. 2011).

To sustain a conviction for conspiracy to distribute marijuana, the government must prove: (1) the existence of an agreement among two or more persons to distribute the drugs; (2) the defendant's knowledge of the conspiratorial goal; and (3) the defendant's knowing and voluntary participation in the conspiracy. United States v. Brown, 587 F.3d 1082, 1089 (11th Cir. 2009) (quoting United States v. Matthews, 168 F.3d 1234, 1245 (11th Cir. 1999)). It is by now well-settled that knowing participation in a conspiracy can be established through circumstantial evidence, and the government need not prove that a defendant

participated in every stage of the conspiracy or had direct contact with each of the other alleged conspirators. See United States v. McNair, 605 F.3d 1152, 1195-96 (11th Cir. 2010); United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998). To prove attempted possession of marijuana with intent to distribute, the government must establish beyond a reasonable doubt that the defendant: "(1) acted with the kind of culpability required to possess [marijuana] knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of [his] criminal intent." United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).

The following critical pieces of evidence support Moncur's convictions. To begin with, Moncur did not act like an innocent bystander at the scene of the drug transaction. Rather, he acted in a manner consistent with knowing and voluntary complicity in the illegal undertaking. The appellant, Moncur, drove Francis, his life-long friend, to transact the deal. See United States v. Lluesma, 45 F.3d 408, 410 (11th Cir. 1995) (noting that "presence and association are material and probative factors that a jury may consider in reaching its verdict"). At trial, Agents Jesus Partierra and Daniel Perez testified that Martin's minivan closely followed Moncur's sedan when entering the marina. Agents Alexander Nader and Partierra also offered testimony demonstrating that, upon arrival, Moncur briefly conversed

8

with Ferris (the source of the dope) through Moncur's car window. Even though no evidence was presented describing the content of the parties' conversation, a reasonable jury could infer that they were discussing the transaction that was about to occur based on the fact that the <u>only</u> link between Moncur and Ferris was their involvement in the drug deal. After Francis exited the sedan, Moncur backed the vehicle into a parking spot, turned off his engine and headlights, and waited while Francis spoke with Ferris. Such behavior not only arguably evinces Moncur's knowledge of the deal that was transpiring, but also suggests his knowing participation in countersurveillance efforts or in providing security for his close friend. Likewise, Martin backed his minivan into a parking space.

According to Ferris's testimony, the Pelican Harbor Marina was "a reasonably deserted public place" -- not a location where one would ordinarily drop off a friend in the evening without a specific purpose. Even though Moncur explained to law enforcement agents while in custody that he was solely giving Francis a ride to the marina, his actions suggested otherwise. Instead of just dropping his friend off and leaving, the appellant parked his car (just as co-conspirator Martin had done), turned the lights off, and waited for the drug deal to unfold. A statement like Moncur's, "if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." <u>United States v. Alejandro</u>, 118 F.3d 1518, 1521 (11th Cir. 1997) (quoting <u>United States v. Brown</u>, 53 F.3d 312,

314 (11th Cir. 1995)). Moreover, Agent Nader testified that Moncur seemingly put

on "an act" when interviewed by the police about his involvement in the scheme.

The jury was free to credit, as it apparently did, Agent Nader's testimony.

Furthermore, given the high volume of drugs -- 800 pounds of marijuana --

and large amount of cash -- $100,000 -- at stake in the deal, a reasonable jury could

readily conclude that the co-conspirators (including Moncur's life-long friend)

would not have permitted an unaffiliated bystander to be present just to provide a

ride to the scene of the transaction <u>and</u> remain there as the deal was consummated.

<u>See</u> <u>Lluesma</u>, 45 F.3d at 410 (noting that "[a] jury may infer knowledgeable

voluntary participation from presence, when the presence is such that it would be

unreasonable for anyone other than a knowledgeable participant to be present");

<u>United States v. Cruz-Valdez</u>, 773 F.2d 1541, 1547 (11th Cir. 1985) (finding "it

reasonable for a jury to conclude that in the course of transporting or distributing

millions of dollars worth of readily marketable marijuana, . . . a prudent smuggler

is not likely to suffer the presence of unaffiliated bystanders"). This is particularly

so because Martin, instead of Moncur, could have driven Francis to pick up the

marijuana. The trial evidence revealed that Martin rented the minivan he used to

drive to the marina at 5:38 p.m. on October 21, and Martin and Francis were in

frequent contact both before and after the car rental. Specifically, the call records

showed that Martin and Francis exchanged calls at 5:23 p.m., 6:09 p.m., 6:37 p.m., 7:57 p.m., and 7:58 p.m.

A reasonable jury could also infer Moncur's knowing participation in the conspiracy from his ownership of the Huawei cellular phone, which, notably, was registered in a fictitious name and address and used to arrange the details. Agent Perez explained at trial that "drop phones" are used so that they are "not traced back to an individual person," and he confirmed that he knew that Moncur was using the Huawei cellular phone on October 21 "to set up a drug transaction." Moncur loaned his "drop phone" to Francis on the day of the drug deal, and Francis used it to call Ferris several times to coordinate the delivery arrangements and obtain directions to the marina. See United States v. Chavez, 584 F.3d 1354, 1364, n.10 (11th Cir. 2009) (noting that "abundant circumstantial evidence of the ongoing conspiracy" and the defendant's participation in it, including the fact that the defendant had "four different cell phones in his name, used three other cell phones not in his name, and possessed numerous other prepaid or disposable cell phones," supported the defendant's conviction).

Moreover, the call records from Moncur's Huawei phone, which were introduced at trial, further support the jury's verdict. On October 21, Moncur and Francis exchanged five calls between 9:44 a.m. and 12:07 p.m., around the time the marijuana was en route to Miami and just before the Coast Guard intercepted

the vessel and its contraband. Moncur and Francis also each exchanged calls with a common acquaintance named "Lamass" or "Lamont." The timing and frequency of these calls are revealing. Moncur and "Lamass" spoke at 11:32 a.m., 6:14 p.m., and 6:53 p.m. "Lamass" later called Moncur twice after Moncur was in custody, presumably for an update on the delivery. Notably, Francis exchanged calls with "Lamass" on October 21 at 11:33 a.m. (one minute after Moncur's call with "Lamass"), 7:04 p.m., and 7:09 p.m., and five times after Francis was in custody.

Lastly, Agent Nader testified that Moncur told police after his arrest that he picked up Francis from his home in Miami Gardens at 4 p.m. on October 21. This provided a reasonable basis from which the jury could conclude that Moncur was with Francis during a call Francis made to Ferris from the Huawei cellular phone at 5:23 p.m., during which Ferris informed Francis, "You're supposed to have ten large for me." Indeed, Moncur even answered Ferris's subsequent telephone call to Francis at 6:09 p.m. Even though there was no mention of drugs on these calls, the evidence established that Moncur was with Francis -- a key participant in the conspiracy -- in the critical hours leading up to the transaction. In addition to the calls made from Moncur's "drop phone" on October 21, the call records from Francis's cellular phone showed that Francis used his own phone to exchange calls between 4 p.m. and the time of his arrest with Martin, Charley Johnson, an unindicted co-conspirator who put Ferris in touch with Francis, and "Dude," the

original supplier of the dope. A reasonable jury also could find that Moncur was with Francis when these calls took place. This, too, supports Moncur's conspiracy and attempted possession convictions.

The circumstantial case presented against Moncur is not overwhelming; but, taken altogether and viewed in the light most favorable to the government, the evidence is nonetheless sufficient to sustain the jury's guilty verdict.

## III.

Next, Moncur claims that the district court committed reversible error by instructing the jury that if it were to find Moncur guilty of the counts in the indictment, it would be required to find him responsible for the total amount of drugs that "was the purpose of the conspiracy or the attempt." This instruction, Moncur claims, "took away from the jury's ability to make [its] own factual findings as to the amount of drugs for both counts."

We review the district court's response to a jury question for abuse of discretion. United States v. Lopez, 590 F.3d 1238, 1247 (11th Cir. 2009). The district court has considerable discretion regarding the extent and character of a supplemental jury instruction, but it may not misstate the law or confuse the jury. Id. at 1247-48. "A challenged supplemental jury instruction is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel 'to determine whether the jury was misled and whether the jury

understood the issues.'" <u>United States v. Johnson</u>, 139 F.3d 1359, 1366 (11th Cir. 1998) (quoting <u>Johns v. Jarrard</u>, 927 F.2d 551, 554 (11th Cir. 1991)).

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id</u>. at 490. Two years later, in <u>Harris v. United States</u>, 536 U.S. 545 (2002), the Supreme Court declined to extend <u>Apprendi</u> to facts that increase the mandatory minimum sentence for a crime. <u>Id</u>. at 556-57. While Moncur's appeal was pending before this Court, however, the Supreme Court overruled <u>Harris</u> in <u>Alleyne v. United States</u>, --- U.S. ---, 133 S. Ct. 2151 (2013), holding that "any fact that increases the mandatory minimum <u>is</u> an 'element' that must be submitted to the jury." <u>Id</u>. at 2155 (emphasis added). The Supreme Court reasoned that "[b]ecause there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum, <u>Harris</u> was inconsistent with <u>Apprendi</u>." <u>Id</u>. at 2163.[2]

---

[2] Neither party brought <u>Alleyne</u> to our attention at any stage in this appeal. In its brief, the government asserts that any error in the district court's supplemental instruction "would be harmless because Moncur's sentence did not exceed the statutory maximum applicable in the absence of a specific drug-quantity finding," and where, as here, "a specific [marijuana] quantity triggers a mandatory minimum sentence" and "results in a sentence at or below the otherwise applicable maximum sentence . . . there is no requirement that a specific drug quantity be . . . submitted to a jury and proven beyond a reasonable doubt." However, in light of <u>Alleyne</u>, this reasoning no longer holds. Moncur was sentenced under § 841(b)(1)(B) because the jury determined that his offenses involved 100 kilograms or more of marijuana. Section 841(b)(1)(B) imposes a ten-year mandatory minimum for defendants, like Moncur, with a prior felony drug

In this case, Moncur was charged with conspiring and attempting to possess with intent to distribute 100 kilograms or more of marijuana. At trial, the court properly instructed the jury:

> [Y]ou may find the Defendant guilty of the crime[s charged] even if the amount of the controlled substances for which he should be held responsible is less than 100 kilograms of marijuana. So if you find the Defendant guilty, you must also unanimously agree on the weight [of] the marijuana the Defendant conspired [or intended] to possess and specify the amount on the verdict form.

See Eleventh Circuit Criminal Pattern Jury Instructions 98, 100 (2010). The court also provided the jury with a special verdict form, asking it to first determine whether Moncur was guilty or not on each count, and if it found him guilty, to determine as to each count whether he conspired or attempted to possess marijuana weighing 1,000 kilograms or more, 100 kilograms or more, or less than 100 kilograms. But in the course of deliberations, the jury posed the following question to the court: "If guilty, does the verdict require selection of (B) which corresponds to the seized amount of marijuana? Or are we to select based on our opinion of share of total amount attributable to defendant?" Overruling defense counsel's objection, the court responded, "If you find the defendant guilty of either or both

---

conviction, and therefore, the drug quantities in this case are elements that must be submitted to a jury. See United States v. Curbelo, 726 F.3d 1260, 1269 (11th Cir. 2013) ("Because § 841(b)(1)(A) and (b)(1)(B) impose a mandatory minimum, the drug quantities in those subsections are elements of the offense under Alleyne and must be charged in the indictment and submitted to a jury.").

counts then the defendant would be responsible for the total amount of the marijuana you find was the purpose of the conspiracy or the attempt."

Viewed in the context of the entire jury charge and in light of the indictment and the special verdict form, it is a close question whether the district court abused its considerable discretion in delivering the challenged instruction. Notably, the court did not direct the jury to select option (B) if it found Moncur guilty; it did not take the drug quantity finding away from the jury. Nevertheless, by instructing the jury that it must find the defendant responsible for the total amount that was the "purpose of the conspiracy or attempt" if it rendered a guilty verdict, the court appeared to limit the jury's plenary discretion to determine the amount of dope that Moncur conspired and attempted to possess with intent to distribute -- a fact that triggered the application of the ten-year mandatory minimum under the Sentencing Guidelines in this case. See United States v. Curbelo, 726 F.3d 1260, 1269 (11th Cir. 2013). Thus, while the district court's original charge and special verdict form are altogether consistent with Alleyne, the court's supplemental instruction could be taken as having interfered, at least in some measure, with the jury's fact-finding province as to an element that triggered the mandatory minimum. Moreover, the court's supplemental instruction also could be read as having caused some confusion by undermining the court's original -- and indisputably proper -- charge. See Eleventh Circuit Criminal Pattern Jury Instructions 98, 100 (2010).

16

Regardless, we need not decide if the supplemental instruction, when taken together with the original instruction and the special verdict form, was erroneous because even if there was any error, Moncur would not be entitled to reversal of his conviction since any claimed error plainly would be harmless. See United States v. Webb, 655 F.3d 1238, 1249 n.8 (11th Cir. 2011) ("Jury instructions are subject to harmless error review."). The conspiracy and attempt charges at the heart of this case concerned only the singular quantity of marijuana that was seized from Ferris on board the Sea Swan II and delivered in the pick-up truck to the co-conspirators pursuant to the law enforcement agents' plan. Notably, the amount of that contraband was not in dispute. Indeed, Moncur and the government stipulated at trial that the seizure involved 366 kilograms. There is no evidence in this record supporting any other amount of marijuana attributable or reasonably foreseeable to Moncur other than the total amount of drugs that "was the purpose of the conspiracy or the attempt." Given the government's theory of the case based exclusively on the sole marijuana shipment of 366 kilograms that formed the basis of the charges and the evidence presented at trial, we are satisfied that the court's supplemental instruction did not and could not have prejudiced Moncur.[3] See

---

[3] Any claimed error in the district court's instruction would not have been of a constitutional dimension since the drug quantity element was submitted to the jury, and while the supplemental instruction arguably intruded upon the jury's fact-finding province, the jury nonetheless made a finding as to the amount of marijuana attributable to Moncur. But even assuming arguendo that the instruction did raise constitutional error, any error would be harmless beyond a reasonable doubt because, as we've noted, a rational jury could not have concluded that Moncur conspired

United States v. Knight, 342 F.3d 697, 712 (7th Cir. 2003) (concluding that even if the jury instruction directing the jury to make a finding on a special verdict form as to the drug quantity attributable to the conspiracy, as opposed to defendant-specific drug quantities, were erroneous, any error would be harmless given the evidence that each of the three defendants was responsible for, and could easily foresee that the conspiracy involved, five or more kilograms of cocaine). Simply put, by finding the defendant guilty of conspiracy and attempted possession with intent to distribute, on this record the jury necessarily must have found that the amount of drugs Moncur was responsible for was 366 kilograms.

**AFFIRMED.**

---

or attempted to possess with intent to distribute fewer than 100 kilograms of dope based on the overwhelming trial evidence. See Neder v. United States, 527 U.S. 1, 18 (1999) (concluding that constitutional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error"); United States v. Anderson, 289 F.3d 1321, 1327 (11th Cir. 2002) (holding that the failure to charge or submit to the jury a specific drug quantity is harmless error under Apprendi if, "by finding the defendant guilty, the jury necessarily must have found, beyond a reasonable doubt, that a certain quantity of drugs was involved in the offense").

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N W
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11 uscourts gov

March 05, 2014

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  12-11389-EE
Case Style:  USA v. Ramiko Moncur
District Court Docket No:  1:10-cr-20801-JAG-4

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Lois Tunstall, EE at (404) 335-6224.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion